In re Laurence Donald BOYER Rosemary Jean Boyer, d/b/a Rosemary's Beauty Shop f/d/b/a Kay's Beauty Salon, Debtors.

Lawrence D. BOYER, Debtor and Lawrence D. Boyer, Trustee, Special Appointment Fund on Behalf of Nebraska Annual Conference, Plaintiff,

v.

Michael J. BALANOFF, Individually and as Bankruptcy Trustee and Richard A. Benjes; Daniel W. Forker, Jr.; Stephen P. Childs; Janice P. Long; Porter K. Brown; Charles M. Chakour, Individually and as Treasurer; Jesse R. DeWitt, Individually and as Bishop and Northern Illinois Conference, all severally and jointly as tortfeasors, Defendants.

Bankruptcy No. 81–00662.
Adv. No. 88–0023.

United States Bankruptcy Court,
N.D. New York.

Aug. 19, 1988.

Lawrence D. Boyer, Oswego, N.Y., pro se.

Grass, Balanoff, Costa & Whitelaw, P.C., Syracuse, N.Y., for Trustee, Balanoff; Mary Lannon Fangio, of counsel.

Hancock & Estabrook, Syracuse, N.Y., for defendants, Richard A. Benjes, Daniel W. Forker, Jr., Charles M. Chakour, Jessee R. DeWitt and Northern Illinois Conference; Stephen A. Donato, of counsel.

Green & Seifter, P.C., Syracuse, N.Y., for Steven P. Childs; Robert K. Weiler, of counsel.

Robert T. Stephan, Atty. Gen., State of Kan., Topeka, Kan., Carl A. Gallagher, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

On March 16, 1988, Laurence D. Boyer ("Boyer"), a joint debtor in a Chapter 7 case he had filed on May 5, 1981 with Rosemary Jean Boyer d/b/a Rosemary's Beauty Shop, commenced this adversary proceeding pro se. On the cover sheet, Official Form No. B104, filed with the Clerk of the Bankruptcy Court, he characterized the adversary proceeding as one to determine the validity, priority or extent of a lien or other interest in property and to obtain a declaratory judgment. In the same cover sheet and in the complaint, he also listed himself as coplaintiff in his capacity as "Trustee of Special Appointment

Fund on behalf of Nebraska Annual Conference" and named as defendants "Michael J. Balanoff, Individually and as Bankruptcy Trustee; and Richard A. Benjes; Dan W. Forker, Jr.; Stephen P. Childs; Janice P. Long; Porter K. Brown; Charles M. Chakour, Individually and as Treasurer; Jesse R. DeWitt, Individually and as Bishop and Northern Illinois Conference all severally and jointly as tortfeasors." *Complaint*, at 1 (Mar. 10, 1988).

In said cover sheet, Boyer described his cause of action as follows: "By concert of actions defendants, by misstatement of facts, by misstatements of ecclesiastical civil law with common purpose to defraud a church trust under color of state law have acted in violation of USC 42:1983, 1985." His complaint alleges that over a ten year period that began with the probate of his mother's will in 1978, the defendants conspired to victimize him through a campaign of deceit and fraud upon the Kansas Courts by misrepresentation and deprive him "of a U.S. Constitutionally guaranteed right to hold and use property within the terms of the trust visited upon him be [sic] the actions of the Quarterly Conference of the Cortland Methodist Church in October 1947 and to further destroy his good name and peace of mind." *Id.* at 7. Boyer claims total damages of $4,253,781.08 and demands a jury trial. *Id.* at 17.

The instant adversary proceeding is the subject of five motions. To wit, the Kansas Attorney General, on behalf of the Hons. Brown and Long, both judges of the District Court of the 27th Judicial District of Reno County, Kansas, has moved for a change of venue or in the alternative to determine the adversary proceeding a noncore proceeding. Boyer has moved for the judicial determination of admittance (document request), for leave to amend his complaint and for partial summary judgment. The Chapter 7 Trustee has cross-moved to dismiss the claims regarding the removal or in the alternative that this

Court abstain from taking jurisdiction and for sanctions.[1] The Court previously denied Boyer's motions for judicial admonition of counsel and *in limine* and an oral motion for sanctions and costs by Benjes, Forker, Jr., Chakour, DeWitt and the Northern Illinois Conference.

During the course of oral argument relative to the various motions made, the issue of the Court's subject matter jurisdiction over this adversary proceeding was repeatedly raised. In addition, said lack of jurisdiction was pleaded as an affirmative defense in the two answers filed by Childs and Benjes, Forker, Jr., Chakour, DeWitt and the Northern Illinois Conference. Accordingly, the Court will now consider its subject matter jurisdiction *sua sponte*.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding to determine jurisdiction pursuant to 28 U.S.C.A. §§ 1334(b) and 157(a) and (b) (West Supp.1988). The following constitutes findings of fact and conclusions of law under Rules 7052 and 7012 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").

## DISCUSSION

"The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Insurance Corp. of Ir. v. Compagnie Des Bauxites*, 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982) (citations omitted). The jurisdiction of the federal courts is limited by the provisions of Article III of the Constitution and Acts of Congress. *See Owens Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978) (citations omitted). Unlike personal jurisdiction, which is an individual liberty right and can be waived, subject matter jurisdiction, in restricting federal power and shaping federal sovereignty, may be raised at

---

1. Familiarity with the Court's Memorandum–Decision of August 11, 1988, denying Boyer's petition for removal of two state court cases, *In re Aldula A. Boyer*, 88–165104, 78–P–58, (probate), and *Boyer v. Chakour*, 88–165105 86–C–681, (petition to vacate probate judgment based on fraud through misrepresentation naming as defendants Chakour, DeWitt and the Northern Illinois Conference and seeking $215,000 in damages), is assumed.

any point in a proceeding. *See Insurance Corp. of Ir., supra,* 456 U.S. at 702–703, 102 S.Ct. at 2104. "Graven in stone is the maxim that parties cannot confer [subject matter] jurisdiction on a federal court by consent or stipulation." *Reale Int'l., Inc. v. Federal Republic of Nigeria,* 647 F.2d 330, 331 (2d Cir.1981). Subject matter jurisdiction of civil actions in federal courts is based on a federal question or diversity of citizenship, as governed by 28 U.S.C.A. §§ 1331 and 1332 (West 1966 & Supp 1988).

█ As the bankruptcy court is a federal court of limited jurisdiction, it has an obligation to consider the issue of its federal question subject matter jurisdiction, whether raised by the parties or *sua sponte. See Marr Broadcasting Co., Inc. v. Shamrock Broadcasting of Texas, Inc. (In re Marr Broadcasting Co., Inc.),* 79 B.R. 673, 675 (Bankr.S.D.Tex.1987). *See also Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876, 881 (2d Cir.1988); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, MOORE'S FEDERAL PRACTICE, § 0.60[4] (2d ed. 1988); 13 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3522 (2d ed. 1984). Moreover, the party alleging the bankruptcy court's jurisdictions has the burden of proving that court's Title 11 jurisdiction over the disputed matter. *See Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.),* 86 B.R. 755, 17 B.C.D. 1162, 1166 (Bankr.E.D.N.Y.1988) (citing cases); *World Travel Vacation Brokers, Inc. v. Bowery Savings Bank (In re Chargit Inc.),* 81 B.R. 243, 247–248 (Bankr.S.D. N.Y.1987) (citing cases). In the event such jurisdiction is lacking, the court must dismiss the action under Rule 12(h)(3) of the Federal Rules of Civil Procedure ("Fed.R. Civ.P."), as incorporated in Fed.R.Bankr.P. 7012(b). *See Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1297 (5th Cir.1985); *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.,* 588 F.2d 24, 27 (2d Cir. 1978).

Sections 1334, 151 and 157 of Title 28 set out the Title 11 subject matter jurisdiction of the district courts and the bankruptcy courts. *See Mullis v. U.S. Bankruptcy Court Dist. of Nevada,* 828 F.2d 1385, 1389 (9th Cir.1987); 1 COLLIER ON BANKRUPTCY §§ 2.01, 3.01 (L. King 15th ed. 1988). 28 U.S.C.A. § 1334 vests original, non-exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11" in the district courts, in addition to granting the district courts original and exclusive jurisdiction over all cases under Title 11. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 92–93 (5th Cir.1987). 28 U.S.C.A. § 157 authorizes the district courts to refer to bankruptcy judges in their districts any or all cases or proceedings arising in, arising under or related to cases under Title 11.

The bankruptcy judge may render final dispositions of core proceedings arising in or arising under Title 11 from which appeal is made to the district court pursuant to 28 U.S.C.A. § 158(a) (West Supp.1988). Unless the parties consent, 28 U.S.C.A. § 157(c)(2), a bankruptcy judge may only submit proposed findings of fact and conclusions of law on non-core proceedings related to cases under Title 11, which are then subject to *de novo* review by the district court. *See Teitelbaum v. Choquette & Co., Inc. (In re Outlet Dept. Stores, Inc.),* 82 B.R. 694, 695 (Bankr.S.D. N.Y.1988). Section 157 provides a non-exclusive list of core proceedings and carves out an exception to the general referral to bankruptcy judges with regard to personal injury tort and wrongful death claims as well as grounds for the district court's permissive and mandatory withdrawal of the reference in specific cases or proceedings. *See* 28 U.S.C.A. § 157(b)(2), (5), (d).

█ The Court recognizes its heightened duty to broadly construe the pleadings of a pro se plaintiff and to give them the benefit of the doubt. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Mullis v. U.S. Bankruptcy Court Dist. of Nevada, supra,* 828 F.2d at 1388; *Munz. v. Parr,* 758 F.2d 1254, 1259 (8th Cir.1985). A close and generous reading of Boyer's complaint simply reveals allegations of the deprivation of his civil rights in pre and post-petition state court proceedings unconnected to the pending bankrupt-

cy case. It may be true that Boyer indirectly seeks a determination from this Court as to the validity of his asserted claim to the monies from his mother's estate received by the Trustee as property of the estate.

It may also be true that his success here might bring into question the proceedings in Kansas probate court. However, the issue of his individual and trustee interest in his mother's estate resulted in a final judgment against him in the probate action in Kansas, *In re Aldula A. Boyer*, and his challenge of that judgment is now pending in the independent state court action in Kansas which he commenced in 1986, *Boyer v. Chakour*. The most liberal construction of his complaint leads to only one conclusion—that Boyer is seeking a positive determination from this bankruptcy court that his civil rights were violated in a now closed state court probate proceeding and in a subsequent action to vacate that proceeding still pending in state court.[2]

Pursuant to 28 U.S.C.A. § 1334(b) and 157(b), the Court finds that the instant complaint does not "arise under" a statutory provision of or substantive right created by Title 11. *See Commercial Heat Treating of Dayton, Inc. v. Atlas Ind., Inc. (In re Commercial Heat Treating of Dayton, Inc.)*, 80 B.R. 880, 884–890 (Bankr. S.D.Ohio 1987) (quoting *In re Wood, supra*, 825 F.2d at 96–97). Boyer has not alleged any right, title or interest under the bankruptcy laws nor has he been able to "'make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.'" *Christianson v. Colt Ind. Operating Corp.*, —— U.S. ——, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988) (quoting *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897) for the test to determine "arising

under" federal patent law and recognizing the uniformity of this test as applied to the identical language in 28 U.S.C.A. § 1331). The instant adversary is not an "arising in" proceeding since it does not involve an administrative matter that would only present itself in the bankruptcy case and would continue to exist independent of the bankruptcy case. *In re Commercial Heat Treating of Dayton, Inc., supra*, 80 B.R. at 884–890 (quoting *In re Wood, supra*, 825 F.2d at 96–97).

Furthermore, the adversary proceeding is not "related to" the bankruptcy case, as any judgment Boyer might collect in this suit would not be satisfied from property of the estate, but presumably from the nine individual defendants, nor would any recovery inure to the benefit of the Chapter 7 debtor estate since Boyer appears to be seeking damages for post-petition wrongs committed against himself individually and as trustee, a non-debtor entity. *See Elscint, Inc. v. First Wisconsin Finan. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987) ("related to" jurisdiction exists when the distribution or allocation of property to creditors is affected); *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 802–804 (3d Cir.1985) (no "related to" jurisdiction where tort claims did not accrue, and thereby become property interests, until after the Chapter 7 case commenced). Michael J. Balanoff's potential personal liability to the Debtor as the Chapter 7 Trustee, if any, would also be a claim against his bond and would not constitute a general claim against the assets of the bankruptcy estate. *See* Code §§ 322, 323. The adversary proceeding does not have a "direct and substantive impact on the bankruptcy estate or its administration" and "any impact its resolution may have on the bankruptcy estate is speculative, indirect or incidental." *Citizens Nat'l Bank of Bowl-*

---

**2.** 28 U.S.C.A. § 1738 (West 1966) requires the Court to give the same preclusive effect to the final probate judgment as Kansas would, absent a showing that it was procured through fraud, collusion or by a court lacking competent jurisdiction. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir.1987); *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 66 (2d Cir.1986). *See also Allen v. McCurry*, 449 U.S.

90, 94–96, 101 S.Ct. 411, 414–416, 66 L.Ed.2d 308 (1980); *Cameron v. Fogarty*, 806 F.2d 380, 384 (2d Cir.1986). Whether or not the conditions for the application of the principles of res judicata or collateral estoppel are present is not within the scope of the instant *sua sponte* motion with respect to subject matter jurisdiction and is properly considered when and if the merits of the adversary proceeding are reached.

*ing Green v. Schaberg Lumber Co. (In re Bowling Green Truss)*, 53 B.R. 391, 394 (Bankr.W.D.Ky.1985). *See also Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 340–341 (2d Cir.1983); *State ex rel v. Mushroom King, Inc.*, 77 B.R. 813, 819–820 (D.Or.1987).

That a possible ancillary effect of his success in this adversary proceeding might be the establishment of a basis for vacating the judgment entered in the pre-petition probate Kansas proceeding and the conclusions of law reached therein through the pending post-petition action and could ultimately result in the disgorgement of monies (i.e. Debtor's share of his mother's estate) that are now property of the bankruptcy estate is far too remote, tangential and attenuated a basis for this Court to exercise "related to" subject matter jurisdiction. *See In re Turner, supra*, 724 F.2d at 341; *In re Bowling Green Truss, supra*, 53 B.R. at 394; *In re Verrazano Holding Corp, supra*, 86 B.R. 755, 17 B.C.D. at 1166. Boyer's success in this adversary proceeding would not automatically trigger the disgorgement of any funds of the bankruptcy estate, as it would in *Boyer v. Chakour*, which, in being a direct action to vacate the probate judgment would, presumably, result automatically in the disgorgement of property of the Chapter 7 estate pending a re-litigation of the probate proceedings. *Compare Pacor, Inc. v. Higgins*, 743 F.2d 984, 994–995 (3d Cir.1984) *with In re Brentano's, Inc.*, 27 B.R. 90 (Bankr.S.D.N.Y.1983). Thus, Boyer has failed to meet his burden of proving this Court's "related to" jurisdiction over the adversary proceeding.

■ The parties have also raised the issue of whether 28 U.S.C.A. § 157(b)(5), which requires the district court to maintain jurisdiction over personal injury tort and wrongful death claims, divests the Court of jurisdiction over the adversary proceeding. *See, e.g., In re Waterman Steamship Corp.*, 63 B.R. 435 (Bankr.S.D.N.Y.1986). The Trustee maintains that actions under 42 U.S.C.A. § 1983 are personal injury tort claims, citing *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *See also Chin v. Bowen*, 833 F.2d 21 (2d Cir.1987); *Okure v. Owens*, 816 F.2d 45, 47 (2d Cir.1987). Boyer has responded that the Supreme Court made the personal injury tort characterization in *Garcia* solely for statute of limitation purposes.

The Court notes that the similar language of 42 U.S.C.A. §§ 1983 and 1985 (West Supp.1988) sounds in tort and each statute provides a remedy that "encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty." *Wilson v. Garcia, supra*, 471 U.S. at 277, 105 S.Ct. at 1947. The Supreme Court held in *Garcia* that § 1983 actions are best characterized as personal injury actions for the purpose of choosing applicable state statute of limitations because "[i]n the broad sense, every cause of action under § 1983 which is well founded results from personal injuries." *Id.* at 278, 105 S.Ct. at 1948 (quoting *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972)). Thus, while §§ 1983 and 1985 are not general tort statutes, *see Jordan v. Five Unnamed Police Officers*, 528 F.Supp. 507, 511 (E.D.La.1981) (citations omitted), they create a species of tort liability for the deprivation of federal statutory and constitutional rights by a person acting under color of law. *See Sampley v. Ruettgers*, 704 F.2d 491 (10th Cir.1983) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)). *See also Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961); *cf. Cullen v. Margiotta*, 811 F.2d 698, 712 (2d Cir.1987).

The term "personal injury tort" embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering, BLACK'S LAW DICTIONARY 707, 1335 (5th ed. 1979). Indeed, Boyer's complaint consistently refers to all nine defendants as tortfeasors and the bulk of his money damages and the gravamen of his grievances appear to be based on the

loss of his professional esteem, name and peace of mind.[3]

The Court, acknowledging the lack of legislative history, finds the statute and the Code silent on any repudiation or limitation of this broad reading of "personal injury tort" within the meaning of 28 U.S.C.A. § 157(b)(5). *See In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 530–532 (Bankr. N.D.Ala.1986). Accordingly, the Court construes § 157(b)(5) to encompass federal and state causes of action for all personal injury tort claims, including those exclusively commenced under §§ 1983 and 1985. *See Smith v. New York State Higher Education Services Corp. (In re Smith)*, 95 B.R. 286, at 290–291 (Bankr.N.D.N.Y. 1988) (citing cases). *See also Anthony v. Baker (In re Baker)*, 86 B.R. 234, 235 (D.Colo. 1988) (court withdrew reference in dischargeability action alleging § 1983 violation under § 157(d) while noting that withdrawal appeared mandatory under § 157(b)(5)); *Baggott v. Piper Aircraft Corp.*, 70 B.R. 223 (S.D.Ohio 1986) (referring to § 157(b)(5) as "mandatory removal"). *But see In re Manning*, 71 B.R. 981 (Bankr.N.D.Ala. 1987) (§ 157(b)(5) solely provides direction for § 157(b)(2)(B) exception of personal injury tort and wrongful death claim against estate).

This construction of § 157(b)(5) is also reinforced by the statutory scheme of § 157 and § 1334, which addressed the constitutional concerns articulated in *Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See, e.g.,* 28 U.S.C.A. § 157(b)(2)(*O*). Furthermore, Boyer's request for a jury trial in this adversary alleging constitutional torts, which could be characterized as a legal action in that it seeks a judgment solely for money damages, would appear to be meritorious. *See e.g., Curtis v. Loether*, 415 U.S. 189, 94

S.Ct. 1005, 39 L.Ed.2d 260 (1974); *American Universal Ins. Co. v. Pugh*, 821 F.2d 1352 (9th Cir.1987); *Zimmerman v. Cavanagh (In re Kenval Marketing Corp.)*, 65 B.R. 548 (E.D.Pa.1986); 1 COLLIER ON BANKRUPTCY, *supra,* § 3.01[7][b][i].

The Court is then confronted by the morass surrounding jury trials in bankruptcy courts, as fueled by the 1984 enactment of 28 U.S.C.A. § 1411 (which did not specifically repeal 28 U.S.C.A. § 1480) and the 1987 abrogation of Fed.R.Bankr.P. 9015. *See, e.g., Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.)*, 835 F.2d 1341 (11th Cir.1988) *cert. granted,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988). Again, the language in 28 U.S.C.A. § 1411(a) preserving an individual's right to jury trial in personal injury tort or wrongful death claims is instructive. The Court must conclude that it has no jurisdiction to hear and determine causes of action for alleged private wrongs arising solely under the provisions of Title 42 "since the obvious purpose of the 1984 Amendments is to prevent bankruptcy courts from trying personal injury tort and wrongful death cases." *In re Poole Funeral Chapel, Inc., supra,* 63 B.R. at 532.

Accordingly, the Court, lacking subject matter jurisdiction, must dismiss the instant adversary proceeding.[4]

By virtue of the foregoing, it is hereby ORDERED:

1. That the adversary proceeding commenced by Boyer, and all motions presently pending therein, be dismissed due to lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(h)(3) and Fed.R.Bankr.P. 7012(b).

2. That the request for costs and attorneys' fees by defendants Childs, Benjes, Forker, Jr., Chakour, DeWitt and the Northern Illinois Conference of the United

---

**3.** The Court does note that Boyer alleges damage to property in the amount of some $38,-334.77 as a result of the defendants' negligence, misrepresentation, libel and fraud.

**4.** Due to the result reached herein, the Court need not address the appropriateness of invoking abstention, pursuant to 28 U.S.C.A. § 1334(c) and Fed.R.Bankr.P. 5011(b). *See, e.g., National Uniton Fire Ins. Co. of Pittsburgh v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 330–334 (8th Cir.1988); *In re Verrazano Holding Corp., supra,* 17 B.C.D. at 1167–1168, 86 B.R. 755; *In re Texaco, Inc.*, 77 B.R. 433 (Bankr.S.D.N.Y.1987).

Methodist Church, pursuant to Fed.R.Civ. P. 11, Fed.R.Bankr.P. 9011 and 42 U.S.C.A. § 1988, is denied.